## Case No. 4,321.

EISEMAN v. JUDAH et al.

[1 Flip. 627;[1] 4 Cent. Law J. 345.]

Circuit Court, W. D. Tennessee. Feb. 23, 1877.

J. O. Pierce and H. F. Dix, for A. Judah et al.

L. & E. Lehman, for guardians.

TRIGG, District Judge. This is a controversy over a portion of the proceeds of a policy of insurance on the life of one Emanuel Ackerman, issued by the Globe Mutual Life Insurance Company of New York, October 19, 1870, for the sum of $5,000, premiums on which were payable semi-annually on the 12th days of October and April in each year during the life of the insured. The policy was payable at the death of Ackerman to his wife Ellen, if then living, or, if not living, then to her children; with the proviso, "that in case of the decease of the wife during the lifetime of the assured, the said assured may, at his option, substitute any other beneficiary under this policy." Ellen Ackerman died in the year 1872, leaving five children, to-wit: Delia and Carrie, the issue of a previous marriage, and Emma, Rosa and Jacob, the issue of her marriage with the insured. The three latter are minors, and their regular guardians, B. Eiseman and G. H. Judah, are the complainants in the original bill. Delia, now the wife of Abram Judah, and Carrie, now the wife of Leo Judah, are, with their husbands, complainants in the cross-bill. Emanuel Ackerman died Ocober 15, 1873. His last will, executed October 11, 1873, contains this clause: "My life being assured as follows: Globe Mutual Life, of New York, $5,000; Newark, of New Jersey, $5,000; New York Life, $5,000; Northwestern, paid up; * * * the above amount of $15,000 and over, I wish divided among my three children, as follows: $5,000—Emma Ackerman,

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

five thousand; $5,000—Rosa Ackerman, five thousand; $5,000—Jacob Ackerman, five thousand; the remainder I will and bequeath to my brother, Jacob Ackerman, in Germany, the sum of $300—three hundred dollars." No other act of Ackerman, except this provision of the will, is set up as an attempt to execute the reserved power of substitution of a new beneficiary under the Globe policy. The policy in the New York Life Insurance Company was payable "to Ellen, wife of Emanuel Ackerman, and children, share and share alike, or their legal representatives." The policy in the Mutual Benefit Life Insurance Company of Newark was payable to the said Ellen, if living; but, if dead, then to "their children." The policy in the Northwestern Mutual was payable to "Ellen Ackerman, his wife, and his children by her, share and share alike." The defendants, Delia and Carrie Judah, have received their two-fifths share of the New York Life policy, without question made by the guardians of the minors. The first semi-annual premium, which fell due after the death of Ellen Ackerman, to-wit, on April 12, 1873, was paid by Emanuel Ackerman. The next premium, which fell due October 12, 1873, was paid by Abram Judah, on behalf of himself and his wife, Ackerman being then ill, and upon his dying bed. It is contended by the guardians of the minor children, that the clause of the will above referred to operated as a sufficient appointment of a new beneficiary, and a valid execution of the power of appointment; and this is the question now to be considered.

1. Was the supposed execution of the power of appointment, by will, interposed in time to affect the rights of the defendants, if otherwise sufficient? Although the cause has, in the argument of counsel, been treated as a case of an ordinary power of appointment, I am unable to determine this question with reference to any of the authorities cited in behalf of the construction contended for by complainants. In this case, Ackerman had not the slightest personal interest of a pecuniary character in the policy, although it insured his own life. The rights of the children of Ellen Ackerman, as beneficiaries under the policy, vested immediately upon her death. It cannot be considered that there was even a moment of time, after her decease, during which the beneficial interest in the insurance was in want of an object on which to rest. We cannot suppose it floating about in nubibus, waiting for a person or an object upon which it might rest, to be supplied by the act of Emanuel Ackerman, or otherwise. All the authorities upon life insurance agree that the rights of the children of the wife, in such cases, become, upon the death of their mother, vested rights in the fullest sense of the term. This is not, then, a case in which, like most cases of appointment under a power, no reason can be assigned for an immediate execution of the power, so that the whole life-time of the donee of the power is allowed for its execution. Here there are reasons for a prompt execution; for, if the power be executed, the rights under the policy already existing are to be taken away. Within what time, then, will the law allow the act of Ackerman to take away the rights thus already vested, by the death of his wife, in her elder children? This period cannot be indefinite. Justice and equity require that the power thus conferred shall be exercised at some precise time, in order that the fact of its exercise may be duly made known to all persons interested; and no further latitude can be allowed to the donee of the power, than to give him a reasonable time within which he shall act under it, if at all. This reasonable time may well be the period ending with the next ensuing payment of premium. At that date the policy will lapse by its own terms, unless a new premium is paid. Such payment will continue the policy in force, and will thus be, in some sense, the making of a new contract. The beneficiaries may well wish to know whether the policy is to continue in force for their benefit, or whether their interest is to cease. If the divestiture of their rights by the appointment of a new beneficiary could be accomplished a year after those rights accrued, it might equally well be postponed for twenty years, during which time the beneficiaries might pay forty semi-annual premiums, instead of one, as in this case. I am constrained to hold the provision for such an appointment, "in case of the decease of the wife," to mean "upon the decease," indicating that event as the proper time; and to treat the time of the next succeeding payment of premium as the latest hour which can equitably be allowed for a divestiture of rights theretofore existing. The time of the execution of Ackerman's will was too late for the appointment, conceding that the provisions of the will were otherwise sufficient.

2. But I do not construe the will as an execution of the power. The testator treated as his own property four policies of life insurance, all which belonged to the children of his wife. Two of them were in law the property of his own three children, and in the two others the defendants were also beneficiaries. None of these were subject to his bequest, yet he attempted to bequeath them all. No reference is made to the power of appointment reserved in the Globe policy. It is true that policy is referred to by name; and, under some of the authorities, a plain and unambiguous reference to the subject of the power has been held sufficient to treat the devise or bequest of the property as an execution of a power of appointment. But in all cases to which the attention of the court has been called, the intention of the testator has been the objective point of inquiry and construction. It is impossible to impute to this testator an intention to execute this power. His intention, on the contrary, clearly was to bequeath this particular policy,

with others, as a part of his personal estate. This controlling intent is inconsistent with any idea of an execution of the power. Without giving any other construction to any part of the will, the construction contended for by complainants must be refused.

These considerations render unnecessary any reference to the other legal and equitable questions raised by the defendants. It follows that the defendants, Abram, Delia, Leo and Carrie Judah are entitled to two-fifths of the proceeds of the Globe policy, which will be paid to them by the guardians of the minors, who collected the same under decrees made in this cause. The last semi-annual premium paid on the policy by the defendants, and the costs of the cause, will in like manner be equitably apportioned between the parties.